## LABAN AGNEY

### V.

## JOHN STROHECKER.

*Landlord and Tenant—Irregular Distress Warrant—Acquiescence—Instructions—Costs—Order to Return Property.*

In a proceeding claimed to be by distress, it is *held:* That the distress warrant which authorized the bailiff to take the landlord's grain rent was an irregular and illegal way of compelling the tenant to make a division according to the lease as claimed by the landlord; that the proceedings under the warrant with the acquiescence of the defendant amount to full satisfaction of the plaintiff's claims; that the verdict for the defendant was proper; that said verdict should not be disturbed on account of any irregularities contained in the instructions; that the plaintiff was not entitled to costs; and that the court erred in ordering a return of the property taken under the pretended distress proceedings.

[Opinion filed December 11, 1886.]

APPEAL from the Circuit Court of Stephenson County; the Hon. WILLIAM BROWN, Judge, presiding.

Messrs. U. D. MEACHAM and LEONARD STOCKOPF, for appellant.

Messrs. JAMES I. NEFF and J. H. STEARNS, for appellee.

LACEY, J.   This was a suit claimed to be a distress proceeding in favor of appellant against appellee, the verdict of the jury being in favor of appellee.

On the 28th day of May, 1884, appellant became the purchaser by warranty deed from the owner, Samuel Diffinbaugh, of a certain quarter section of land in said Stephenson County.   At the time of said purchase the appellee was in possession of it and had been for a year at least under a certain contract for rent from Diffinbaugh, his lease continuing for the year 1884.   The contract was verbal, and as testified to by

John Diffinbaugh, agent for Samuel Diffinbaugh, was that ap-
pellee was to pay for the last year he lived on the place one-
third of all the small grain and corn; no agreement as to the
delivery of the grain except such corn as was wanted for feed
was to be delivered when he, witness, wanted it. Appellee
was for that year to have all the hay and apples and Diffin-
baugh never had any potatoes. To the same effect is the tes-
timony of Isaiah Best, who sold the farm to appellant, and as
Best swears, appellant was to take the land and accept appellee
as his tenant the same as Diffinbaugh had rented it to appellee.

Appellant however claimed and introduced evidence tend-
ing to show that appellee was to pay also one-half of the hay
and apples and one-third of the potatoes. So far as it is nec-
essary to sustain the verdict of the jury in this case, we are
satisfied that the jury were justified in finding with appel-
lee on his contention as to the terms of his renting from Dif-
finbaugh.

On the 9th of August, 1884, appellee threshed a portion of
the small grain, oats and barley. It appears to be fairly estab-
lished that by mutual consent between appellee and appellant
the latter received and took away his full one-third portion of
the grain threshed at that time, and this would amount to an
attornment on the part of appellee to appellant of his alle-
giance as tenant to the latter. On the 20th of October, 1884,
the appellee threshed a portion of the remainder of the small
grain, when appellant's two boys went to receive the balance
of the rent, but being refused admittance or the privilege of
taking appellant's share they went back home and informed
their father of the circumstances, and then went to town and
got a distress warrant and gave it to Frederick Baker, the
Deputy Sheriff, who went with the appellant and his two boys
to the premises in question where the threshing was going on.
Appellee said he did not want the Agneys to come on the
place. Appellant said he had come for his share of the grain.
Appellee said they had nothing there and inquired if Baker had
a warrant and was told he had not. Then appellee said, "Drive
them off the place." Appellee's boys then attacked the Agneys
when Baker commanded the peace, and asked for the distress

warrant which was handed him, and Baker read it to appellee, when the latter left the premises to go to Freeport. Before the distress was levied one load of oats and another load, part of oats and part of wheat, had been delivered to Jerome Fye at Elroy in appellee's name, but was afterward transferred to the Sheriff, Stewart. This was done by the order of Baker and appellee. There were sixty-five bushels of oats and twenty-seven bushels of wheat. The balance of the one-third of the grain was hauled in the name of Wm. Stewart, the Sheriff, in November. The first grain hauled to Elroy had been set apart by appellee as the one-third for rent, as far as the threshing had then proceeded, but intended for delivery to Diffinbaugh, the original landlord.

Appellant, at the time the distress warrant was read, told appellee that if he would let him have his share that he would pay all the costs.

The distress warrant issued in this case was peculiar. It was not a distress warrant under the statute authorizing the bailiff to distrain for the value of the portion of the grain coming to appellant by virtue of the lease, but was in the nature of an order to Baker, the bailiff, to force a division of the grain and to take and deliver to appellant his share claimed to be due him under the lease. The warrant authorized the bailiff to distrain the goods and chattels of appellee wherever found in the said county—that is to say, one-third of the wheat, oats, corn and potatoes, and one-half of the apples and hay grown on the premises in question. This was all there was of the warrant. The bailiff, then simply acting as intermediator, proceeded in the matter in exact accordance with the authority, and by arrangement with appellee selected out the one-third of the grain, and delivered it over to appellant. He, as he says, got his share of the wheat and oats and sold it. The forty acres of corn was divided by the bailiff and appellee and a man hired by the bailiff, but paid by appellee, to gather the corn and haul it to appellant who received his one-third of it and fed it up to his stock. One-half the hay was divided and set apart for appellant and fenced by appellee for the appellant at the bailiff's request, and a portion taken by the appellant, and the

remainder might have been received if he had seen proper to take it. The potatoes were dug and one-third left on the ground for appellant as ordered by the bailiff which could have been taken if appellee had so desired, although they were allowed to rot. Appellant took a portion of the apples, all, as far as the evidence shows, that he desired. This was in no sense a proceeding under the statute to enforce the payment of the rent in money to the extent of the value of the grain rent reserved, but was an irregular and illegal way of compelling the appellee to make a division according to the terms of the lease as appellant claimed it—in other words to compel a specific performance. The appellee, although he was not compelled by law to submit to this manner of enforcing the payment of the rent, submitted and acquiesced in the demands of the appellant and his agents, the Sheriff and Deputy Sheriff, and delivered over to him all of the one-third of the small grain and corn which was received and enjoyed by him. We hold that this amounts to a full satisfaction of his claim so far as that portion of the rent goes; so far as the one-third of the potatoes and one-half the apples and hay are concerned, we think the jury were justified in finding that they were received also, and further if not received, that appellee did not owe that portion of the rent claimed in accordance with the lease with Diffinbaugh. It therefore appears that the claim of the appellant had become fully satisfied before the suit was called up for trial, and before the warrant had been charged so as to make it a proceeding in distress under the statute.

The jury no doubt found in rendering their verdict that the appellee owed no rent to appellant as far at least as the grain was concerned, and that it had been fully satisfied by being delivered to appellant and by his receiving it as such one-third and making use of it. That he had received full satisfaction of his claim and there was nothing remaining upon which he could rightfully claim a recovery. Having received full satisfaction for his claim for rent in the manner provided in the lease, he could not recover. Having treated the lease as still in force during all the irregular proceedings and claiming the right to receive the rent in kind, and so receiving it and mak-

Agney v. Strohecker.

ing use of it, he can not now be allowed to recover for the value of it.   The court allowed an amendment to be made in the warrant so as to allow a recovery for the value of the grain reserved as rent, on the terms that appellant pay all the costs of that term up to that time.   His cause of action having been extinguished as we have shown, there was nothing left for the jury to do except to find a verdict for the appellee, which they did.   The appellant takes exceptions to appellee's 1st, 2d, 3d, 4th, 5th, 6th and 7th given instructions.   We have examined these instructions and think that while some of them may be erroneous on some questions of law and raise perhaps immaterial issues, yet the evidence is quite clear and without serious contradiction on the vital questions in the case, and we do not feel authorized to disturb the very just verdict in this case on such grounds.   There was only the matter of costs involved and the appellant having by his acts in receiving the rent on the basis of the lease extinguished his cause of action, could not recover costs.   Skinner v. Jones, 4 Scam. 193; Baker v. Pratt, 15 Ill. 568.

The court, however, committed one error, and that was in ordering the appellant to return the property distrained or taken under the pretended distress proceedings.

The distress proceedings were irregular in not conforming to the statute.   The rent having been paid in full in kind by the consent of the appellee, he is not entitled to a return. There is nothing more to settle between these parties, and the appellant should not be compelled to return the property.

The order for the return of the property to appellee is therefore reversed and the judgment in all other respects affirmed.

The order of return of the court below being reversed, the costs of this court should be assessed against appellee, which is so done.

*Judgment affirmed except order of return of property to appellee, which is reversed.*